Dennis Moss appearing on behalf of the appellant Fatemeh Johnmohammadi. I was going to comment how Bloomingdale's came after Nordstrom's, but I'll leave that to myself. This case involves the interplay between three federal laws, the Norris-LaGuardia Act, the National Labor Relations Act, and the Federal Arbitration Act. The question before this Court is, are the substantive rights of Bloomingdale's working men and women to engage in concerted activity for mutual aid and protection undermined by Bloomingdale's arbitration policy on account of the Federal Arbitration Act? The simple answer to this question is set forth in 29 U.S.C. section 103. It proclaims that promises which interfere with the exercise of rights to engage in concerted activity are unenforceable. Any promises. Doesn't matter whether it's in an arbitration agreement or anywhere else. You can't promise someone in an individual agreement you're not going to go on strike. You can't promise somebody in an individual agreement that you're not going to engage in concerted activity in the form of collective litigation. And this form of collective litigation, this form of concerted activity, I would dare say, has provided over a trillion dollars in the last 10 years to workers, to individual workers. And in 29 U.S.C. section 102, it is a radical statement of public policy. It says that the individual worker is powerless, or they said, they used the word helpless. When it comes to getting the benefits of wages and the rights of employees relative to their employers. And that was passed in the first depression, in the Great Depression. It was passed at a time where for decades there were laws in effect which said, not laws in effect, there were contracts, not unlike this contract, that says you cannot engage in concerted activity. Those were yellow dog contracts. The Supreme Court repeatedly, repeatedly upheld the constitutionality of laws which said those contracts are valid. Congress responded. Congress responded and said, no, any promise that contradicts the right we are creating in 102, to engage in concerted activity for mutual aid and protection, are invalid and unenforceable. As you're aware, this week the Fifth Circuit declined to enforce the NLRB's decision in D.R. Horton to address this issue. In Horton, the board held that an employer commits an unfair labor practice. It requires employees to pursue all employment-related disputes through individual and collective litigation. Not collective or class arbitration. The board held such an arbitration clause interferes with the right to engage in concerted activity for the purpose of mutual aid or protection. The basic holding of Horton is straightforward, and as I will explain, correct. The Fifth Circuit got it wrong. Can we just be clear about one thing? I want to make sure I understand this correctly, that the facts here are not the same as in Horton. That in Horton, the arbitration agreement did not have a 30-day or a provision where the employee could opt out and not be subject to it. But here, that was the case, right? And Horton specifically says that we're not deciding that issue, which is a more difficult issue. So Horton didn't actually, even though Horton's been now overruled by the Circuit, Horton didn't really answer the question that's in this case, did it? Well, Horton didn't answer it, but the law answers it. Okay. The law answers it by saying any promise, any promise that interferes with the right to engage in concerted activity is unlawful. If Bloomingdale's gave an employee $1,000 and said, for this $1,000, you have to agree to arbitration, and you agree not to join a union, that would be a promise that violates 29 U.S.C. Section 102 and 103. Any promise. And the Supreme Court had this issue in the J.I. Case case and the National Liquorice case. In both those cases, there were contracts that employees did not have to enter into. And the U.S. Supreme Court found in those cases that those contracts were unlawful. And so even though the board said it's a difficult issue, it's a different issue, but it's not a difficult issue. I think it's answered by the express language of the statute as well as by the Supreme Court in National Liquorice and by the Supreme Court in J.I. Case. There are also some circuit court opinions. And the J.I. Case said something very interesting. It said something to the effect that no matter what the circumstances of the entering into the contract, it is unlawful. So the J.I. Case case has to be alluded to in that respect. Kennedy. Maybe you could address the CompuCredit case. That seems to me to be a major obstacle for your argument to succeed here. Well, the CompuCredit case I don't see as a major obstacle, but I respect that you do. Well, no. That's why I'm here. The CompuCredit case involved a statute that did not create a substantive right. The key to the analysis here is we have the Congress created a substantive right, and all the Supreme Court jurisprudence on this issue says that where a substantive right is involved, this is the Mitsubishi case, CompuCredit says it, American Express said it, where an arbitration agreement takes away a substantive right, that arbitration agreement is invalid. But the substantive right here in question is the right to engage in concerted activity, right? Yes. That's your argument. And one form of it. CompuCredit say that the right to enforce a right given by Congress is not a substantive right in and of itself. It's the ability to enforce. But the ability to enforce, just because you have the ability to bring a suit in court doesn't create another substantive right. Well, Rule 23 does not create a substantive right. But the North LaGuardia Act does. And because the National Labor Relations Act does. So to say that when CompuCredit says the Credit Repair Act doesn't create a substantive right or Rule 23 doesn't create a substantive right, that is accurate. But none of those cases dealt with this powerful opportunity to exercise concerted activity for mutual aid and protection through the concerted activity of joint litigation. None of those cases address it. But I mean, essentially, the Act has its own enforcement mechanism, right? It's got you can file an unfair labor practice charge. You can address issues of interference with concerted activity through that avenue. Here there's arbitration that's available through the arbitration agreement. And CompuCredit, I thought, said the availability of arbitration as a vehicle for addressing the harm is adequate. That was the whole point about not being able to bring a suit. It doesn't interfere with that right. So how is this different? CompuCredit upheld the right for individual arbitration. Individual arbitration, Congress has said, individual employees are helpless. My client's case was worth a couple hundred dollars in unpaid overtime. There may have been 10,000, 20,000 Bloomingdale's employees who had the same situation where they didn't factor certain bonuses or, you know, when you buy a credit, when you get a credit card, sign up for a credit card, they give you a bonus. We're not factored into the overtime. One employee under CompuCredit has a right to vindicate that right. And no one's saying they shouldn't have, for individual purposes, a right to do this. But here we're talking about the power of collective activity. And the fact that you could file an unfair labor practice charge is not the same as going on strike. It's not the same as going on the Internet and trying to organize a union with your coworkers. And it's not the same as getting together with your coworkers and pursuing together through litigation the right to enforce the law. And the Supreme Court has said in Eastex versus NLRB upholding board decisions that resort to the judicial process is a form of concerted activity. And here it's been denied by contract. This is the yellow dog contract of this century. And as a consequence, Eastex should be upheld as a form of concerted activity. The board has said it several times. Even Tom Brady of the Boston Patriots had filed a lawsuit. New England Patriots. New England Patriots. I say it from Rhode Island, not Boston. The first thing they teach you in rhetoric class is know your audience. So you're right. He files a lawsuit with other players. Concerted activity. And the court said that's a form of concerted activity. It's protected by the law. And that's essentially what this case is about. It's a substantive right. Compute Credit said the flaw in the plaintiff's position was that the statute did not deal with waiver of the right to engage in collective activity. Here we have the National Labor Relations Act. We have the Norris LaGuardia Act, which expressly give employees the power to engage in concerted activity. And it is a very powerful, powerful form of concerted activity. Let me just tell you why I think Compute Credit is such a problem for you. I mean, listen, I'm sympathetic to your argument. Everything you've said makes sense. But I read the Supreme Court as telling us that if we're going to infer that Congress wanted to put a certain set of, let's say, substantive rights on a different footing, the language in the statute, let's say the Norris LaGuardia Act or the National Labor Relations Act, has to be a lot more explicit than what we're looking at right in front of us. I'll tell you why I believe you're incorrect in that regard. The Supreme Court jurisprudence talks about substantive rights in Mitsubishi, in Gilmer, all those cases. Now, and Compute Credit does not. And if we were to follow the reasoning of your analogy, let's say there was an arbitration agreement that said, you agreed to this wonderful thing of individual arbitration. It's a great, wonderful process. And in exchange for that agreement, you have to give up your rights, you have to give up your right to be free from gender discrimination. Let's say that's in the contract. We've got arbitrate, give up your right to be free from gender discrimination. Under the United States Code. The freedom from gender discrimination is a substantive right. By the logic of what you pose to me, the gender discrimination laws would have to say, in the United States, you cannot discriminate against someone on the basis of their gender. And there cannot be arbitration agreements which waive that right. And that's the difference. That's the ‑‑ that addresses your position regarding Compute Credit. Because this is a substantive right. It's not a procedural right. Look, in the FLSA cases and in the age discrimination cases, it was easy for the courts to say, hey, these statutes don't create a right to engage in collective activity. They may refer to courts and class action, things like that, but they don't create a positive position you cannot waive the right to engage in concerted activity. None of those laws and none of those cases are equivalent to what Congress decided in the Norris LaGuardia Act and the National Labor Relations Act. And that takes the Compute Credit analysis of, well, you need to have a direct ‑‑ Well, first of all, the Fifth Circuit got one thing right. It said there are two bases upon which you could attack these things. One is illegality. The other is a statute has to be clear. Well, I've dealt with the statute clear thing, I think, in my analogy. Here, there is a conflict. I mean, there is no ‑‑ there is absolutely no conflict. You have the Norris LaGuardia Act and the National Labor Relations Act, which expressly say you can engage in concerted activity for mutual aid or protection. You have the Federal Arbitration Act says, well, you've got to arbitrate things. Arbitration is the best thing since sliced bread. But it also says that any contract, it has to be treated like any other contract. And any ‑‑ and if another contract, since Section 2, I don't have the exact language, but you've read it, the language is if any other contract would fail on this basis, so would an arbitration agreement. And here we have that illegality. It's a perfect fit for Section 2. There's no conflict in the laws because Section 2 of the Federal Arbitration Act says arbitration agreements can't be enforced when they're illegal. And the National Labor Relations Act and the Norris LaGuardia Act say absolutely nothing about arbitration. They don't say any law to engage in concerted activity is illegal except in arbitration agreements. It says any law is illegal. The Arbitration Act ‑‑ What is the illegality? I'm not sure I'm following your line of thinking. Well, 29 ‑‑ You're citing to the Savings Clause. Okay. 29 U.S.C. Section 103 says any contract that is contrary to the public policy stated in 102 about concerted activity is unenforceable. Okay. And Section 2 of the Federal Arbitration Act says arbitration acts are like any other And I think it's Kaiser v. Mullins. A U.S. Supreme Court case said that a contract that violates the National Labor Relations Act is unlawful and unenforceable. It was Kaiser v. Mullins and some other cases have said that as well. Another problem with the Fifth Circuit analysis is they rely a lot on concepcion. And concepcion deals with preemption of a State law. This does not involve preemption of a State law. And the Fifth Circuit says, well, the State law in California goes against the overarching promises of the arbitration statute and the fundamental attributes of the arbitration statute. Well, the Federal Arbitration Act is not an uber law. It may preempt State law, but it does not preempt another Federal law. And here, there's an overarching reason for employees to be able to engage in concerted activity for mutual aid and protection, because according to Congress, they're helpless if they can't do that, expressly in the statute. It didn't have to be divined from input. Let me ask you another question. I imagine Bloomingdale's in the chamber are going to say, after CompuCredit, if you want this, get Congress to say that class actions are concerted activity and may not be subject to an arbitration waiver. Amend the National Labor Relations Act. Get it amended. Get the thing you want through Congress. You don't have to, because concerted activity is defined by the NLRB. That role was devolved upon the NLRB in 1935. And they've defined the NLRB versus some disposal company. I forget the name of the case. I forget. It has the word disposal in it. They specifically said that it's for the NLRB to determine what concerted activity means and that court should defer to the NLRB's determination. And Eastex, the Supreme Court, already said going to court is a form of concerted activity. You don't need to redefine anything. You don't have to reenact anything. Well, let me just focus you on Section 7, then, of the NLRA. How do you deal with the or, you know, the employee has the right to engage in collective activity or concerted activity or refrain from doing so? Exactly. They have that right to refrain. So they've exercised it. No. So what's entering into a contract is different than refraining. And that's the key difference. Employee just chooses to make themselves subject to a class action waiver. Why isn't that just a decision on their part to refrain? It's the same thing as an employee before enactment of the law saying, you know what, I'm going to agree with my employer not to join a union. I'm going to enter into a yellow dog contract. They have a right to refrain from joining to a union. Congress said that's illegal. The same is here. The contract is what's illegal. The promise is what is illegal under 103. They can refrain. Anybody, if Ms. John Mohammadi files a lawsuit, other people don't have to participate. That is what is meant by the ability to refrain. An employer cannot have a contract. Any promise is unenforceable. So you're saying they can agree that's a promise. This arbitration agreement is a promise. So in regards to the 103 clause about any promise is unenforceable, this fits that language. It's consistent with the right to refrain because just if I throw up a picket line out in front of Bloomingdale's tomorrow, an employee can cross that picket line. And that would be refrain from my concerted activity. They don't have to join in my lawsuit. They can endorse the check that I get them through my class action back to Bloomingdale's if they want. They have the right to refrain. Can I ask one more question? Don't you have another problem here, which is, I don't know if this is discussed in the briefs, I don't recall it, but isn't it the case that you could preserve this collective right of action through collective bargaining? That is, once the union is in place in its negotiations with the employer, can it negotiate for class action arbitration as part of, or I guess theoretically, it could negotiate that these, you know, the company would not enforce any waivers on bringing class actions. So I guess isn't there an avenue within the NORA's contemplated process to broaden out into collective actions? Well, as happened in the New England Patriots case, they were in the union. They had a collective bargaining agreement and they dropped out. That did not take away their rights to other forms of concerted activity. And here, collective bargaining is just one form of concerted activity. The statute, 29 U.S.C. section 157 and 101 or 102, they talk about many avenues of collective activity. Just because you collectively bargain doesn't mean you give up other arrows in your quiver. But I think it's important to note, there's one case that was not cited in my brief. It's the Boy's Market injunction case. And I cited Mastro Classics for the proposition that a union could waive the rights to engage in other forms of concerted activity in a collective bargaining agreement. But I think the Boy's Market case is another one to look at. Because in that case, the U.S. Supreme Court in a Sinclair case said something about a strike, even when there's a no-strike clause in a collective bargaining agreement, cannot be enjoined because of concerted activity. Boy's Market makes the point is when concerted activity begets a waiver, in other words, when people engage in the concerted activity of unionizing and that begets a waiver of a right to strike, a no-strike clause in a collective bargaining agreement, because of the enactment of Taft-Hartley and the Wagner Act, that makes it distinguishable from our situation here. And in terms of the collective bargaining opportunities, I think I would refer to the Boy's Market case. We're going to cut you off there because your time has expired, but we will give you three minutes for a rebuttal. Thank you, Your Honor. Okay. Let's hear from the defendant. Defendant. May it please the Court. My name is David Martin. I'm here on behalf of Bloomingdale's at-counsel table as Mr. Pincus, who's here on behalf of the U.S. Chamber. And what I'd like to do is I'd like to take ten minutes of my time for myself and then to yield the balance of my time to Mr. Pincus. I think what's important, and just so you know, I'm going to address two main issues here, or there are two main issues. One is the voluntary issue, and the second issue is the issue under the Compu Credit. I'm going to try to spend some time talking about the voluntary issue, and Mr. Pincus, to the extent we're allowed, will talk about the Compu Credit and the Federal Arbitration Act issue. But what's really important here is that you have to remember that John Muhammadi is relying on the exact same cases and on the exact same legal rationale as the Board relied on in D.R. Horton. And as we all know, D.R. Horton was reversed earlier this week by the Fifth Circuit. D.R. Horton has also been rejected by the Eighth and Second Circuit, and it has been heavily criticized by the Ninth Circuit. And, of course, we're not just talking about is D.R. Horton valid. We're trying to – what John Muhammadi is trying to do is to extend its reach to include voluntary arbitration agreements, and – which is something that, as Justice mentioned. How are you defining voluntary versus involuntary? Yes. Let me first, if I can, and I do want to address that, but I want to emphasize just for a moment, is that in the court below, there was absolutely no evidence whatsoever that John Muhammadi did not voluntarily enter into her arbitration agreement. And there was no evidence, as Judge Wu pointed out, that there was any threats or reprisals and that her decision wasn't absolutely voluntary. I'd also point out that – But other than that, if you don't agree to this, you're fired? No. In fact, as said, Horton agrees. And I think – Can you just answer my question? That would help before you go on. Yes. How do you define voluntary versus involuntary? A voluntary agreement is one that you're free to accept or not. And whatever your decision is in that regard will not in any way affect your employment. And here you say that because the employees can fill out the form and say, you know what? Thanks, but no thanks. I'll just opt out. Am I remembering the nature of your client's agreement? Exactly, Your Honor. I'm sorry. I don't remember the nature of your client's agreement. If I can, just to point out is, you know, there are some collateral proceedings in this case because John Mohammadi initiated a – an unfair labor practice charge in front of the NLRB. And after a full day of hearing, the administrative law judge found that the agreement was voluntary, found that D.R. Horton was not applicable because it was a voluntary agreement. And what he said is specifically found in his decision that there was adequate notice to all the employees, that they were encouraged to study and read and learn about the agreement over the 30 days that they were provided, that the opt-out procedure itself was more than sufficient. Okay. So hang on. So that's why it would have helped if you just answered my question directly. Okay. So an involuntary agreement, in your view, is the one that just says, effective immediately, you're subject to this new term, and if you don't like it, you can quit? Within the terms of the NLRA, yes. Okay. So the reason this is completely voluntary is because you give the employees notice, they have an adequate time to think about it, and then if at the end of the day they say, boy, you know what, that arbitration thing really isn't a good deal for me, they could fill out the opt-out form and send that in. Right. Okay. And I would like to point out that – And keep their job. And keep their job. Right. Absolutely. And I would point out that the right to refrain from concerted activities was actually put into the statute in 1947 with the Taft-Hartley Act. And it's a right to refrain from any concerted activities. And Congress, and it's been construed this way by the U.S. Supreme Court, has, because of that action, the right to refrain is an equally important right to the right to engage in concerted activities. Now, I think there's two cases that are fairly interesting on that point, particularly on what does it mean to be voluntary. The first one is a case that the Ninth Circuit has already cited, which is the Salt River case. And in that case, what happened is, and it relates to class actions, is the Ninth Circuit concluded that an employer did not commit an unfair labor practice when, after talking to an employee, an employee decided to remove his name for a petition authorizing the filing of an FLSA collective action. He, even though it involved a class action, it involved perhaps an attempt to concerted activity, the Ninth Circuit concluded the person did it voluntarily, and he's absolutely free to do so. Now, earlier in Mr. Moss's argument, there's some talking about this is different, though. If an employee asks, an employer asks an employee to give up, you know, a right, and the law is different on that. And I think the answer to that question is also in another case, which is in an LRB case that was enforced by the Third Circuit, known as the Allegheny Ludlam Corporation case that's cited in the brief. And let me just very quickly tell you what that case was about. In that situation, what happened is that the employer wanted to solicit employees to come forward to participate in an anti-union campaign video. So they wanted the employee, the employer wanted to request employees to participate. The NLRB was very concerned about that, because just like the opt-out procedure here, it would be almost permanent, because there would be a permanent record of the employee's anti-union sentiments. And so what the NLRB eventually did is that they issued guidelines as to when can you come forward and specifically request an employee, let's say, to refrain from engaging in concerted activities. And there was basically three standards there. The first, the NLRB said that there had to be a general announcement. It couldn't be employee-specific. A genuine announcement that stresses that the participation is voluntary and that no matter what the decision, there's no reprisals or no rewards. The second thing they said is to signal your consent, is you must not be required to signal your consent to a supervisor. It has to be someone else. Okay? So there's no objective manifestation of making a choice, an observable choice. And third, that it couldn't independently arise. It couldn't be accompanied by other violations of the NLRA. And if you look at the opt-out process here, if you look at the opt-out process here, it's identical. General request that everybody consider the arbitration agreement. A promise that there is no reprisals, no rewards if you accept. And stressing that it's voluntary. How many opt-outs does Bloomingdale's get? I think that issue is addressed, by the way, in the administrative law judge's opinion, which I know we've submitted to the court. Initially, when it was first rolled out, it was about 10 percent of all the employees, Macy's and Bloomingdale's. We had about 180,000 employees. We didn't break it up for that purpose. So 10 percent initially opted out. Today, after the program's been in effect 10 years, it runs about 3 percent. And I think the actual numbers are in Judge Wiedekind's decision. So 3 percent out of 180,000 is a very significant number, so far as I can see. And what's the status of the NLRB? The status of that proceeding is it has been – both parties have brought it in front of the NLRB. Both parties filed exceptions. It's fully briefed before the NLRB. Okay. The four – I wanted to just point out one other thing about Mr. Moss's argument, and it was specifically about that this is a yellow dog contract under the Norris LaGuardia. I think there's one thing to really keep in mind, and I think, Judge Smith, you mentioned it, is, first, our arbitration agreement specifically excludes employees covered by collective bargaining agreements. It specifically contemplates that if you are or you become a member of a union, and we have some union stores, if you are or become a member of a union, you won't be covered by the agreement. So the opt-out is not irrevocable in that sense. If you choose at any time during your employment to become a member of the union, you are free to do so, and you are free to engage in the collective bargaining process, and you are no longer subject to arbitration. I think the other issue – so I think that's very, very important – there is no anti-union amnesty whatsoever regarding our agreement. We actually are subject to arbitration if you're part of the union, because I'd be very surprised if your union contracts didn't have an arbitration clause in them. Yes, they do, but it's a separate process that's been negotiated and bargained by It's not as if by virtue of the fact that you joined the union, you now can bring your claim in court. It may be that, but that depends on what the contract with the union is, doesn't it? Well, yes. To be frank, in certain circumstances under our union contracts, at least those of the And there is an arbitration procedure, but it doesn't exclude you from going into court. It does or does not? Not. So you're saying – On certain issues. Let's take these issues. Yes. So you're saying a unionized employee would have the option of going to arbitration or filing in state or federal court. Is that what you're saying? On the wage and hour issue. Right. Okay. And I also want to point out, it's obvious that we carve out the – we carve out any claim that you can bring in front of the NLRB. So if in any way you've been retaliated against or haven't been able to band together with your – Can you bring a class action within the unionized context? Not within, as I understand it, our collective bargaining agreement, no. Can you bring either a class action in court and or a class action arbitration? I don't – the arbitration – I don't know how the arbitration process works. I do know that if it's a thing that you can bring into court, you can bring a class action. Okay. Okay. I'd like to yield my time.  Good morning, Your Honors. May it please the Court. Andrew Pincus for the – amicus, the U.S. Chamber of Commerce. I thought I would start with the CompuCredit case and how, in our view, that analysis works here. I think we agree with the Court that – with the expressions that some members of the Court made that CompuCredit is critical. It is a slightly different analysis, I think my colleague is right, than happened in CompuCredit. In CompuCredit, the question was, does the FAA's background principle, which says – which establishes a presumption that all claims created by Federal law will be arbitrable unless there's a clear congressional command to the contrary, was that particular FAA background principle negated by something in the statute in that case? And the Court said, notwithstanding the fact that there were references to judicial enforcement and there were provisions about how courts would administer the law and there was an anti-waiver provision, those things did not constitute, considered together, the clear contrary congressional command to say this claim isn't arbitrable. Here we have a slightly different question. It's true because we're dealing with a related but distinct background principle under the FAA, the one that was recognized in Concepcion and American Express, which is that enforcement of an arbitration agreement can't be conditioned on requiring the availability of class procedures, either in court or in arbitration. So the question here is, is there something in the provisions on which the plaintiff relies that constitute a clear congressional command that displaces that otherwise applicable background principle of the FAA, which, as the Court recognized in American Express, applies not just in claims arising under State law, as in Concepcion, but also in claims arising under Federal law. American Express was an antitrust case. So I think that's the analysis. And so we have to look at these two statutes and say, did Congress express itself? And I think the question is Congress as opposed to how the agency may have subsequently interpreted the law. So the language in the statutes here is concerted activities. It doesn't refer at all even to adjudication, let alone to class-based adjudication. And we think looking by analogy to CompuCredit, those references just fall very far short of what would be required to say when Congress wrote these statutes, it was intending to negative the presumption in the FAA that arbitration, the arbitration that's protected is individualized arbitration. Maybe you can address counsel's argument that the kind of right described, let's say, in Section 7 or in Section, I guess it's 102 or 103 of the Norris-LaGuardia Act, it's of a different order. It's a substantive right that puts it on a different footing entirely from the kinds of rights that were issued in these other cases? I don't think that the substantive procedure distinction really works here. I think the question, it's different than what was at issue in CompuCredit and of the other cases that the Supreme Court has addressed, because it is separate. It's not, is this claim arbitrable? It's, does, has Congress said in any adjudication of this right, class procedures must be available? So it's a slightly different question. I don't know whether that's substantive or procedure. I think the way the Supreme Court has talked about substantive waivers of substantive rights in connection with arbitration really is in the Mitsubishi case. And there, what the Court said is, if the arbitration clause or the Eric Choice of Law clause is going to be interpreted to preclude you from asserting a claim under the particular statute, that's a waiver of substantive right. So I don't think we have that here any more than it existed in Concepcion or American Express. So I think in terms of the way that the Supreme Court has, in the arbitration enforcement context, characterized substantive and procedure, I think this falls on the procedure line, because we're talking about the methodology for enforcing the Federal right. We're not saying you can't enforce the underlying Federal right at all. Granted, it's a little different, because the Federal statute that creates this claimed right to procedural enforcement is not the one that creates the underlying rights, but I'm not sure that makes any, a determinative difference in this context. So I think looking, looking at the statute, that language, concerted activities, again, reasoning by analogy, if a reference to judicial enforcement wasn't enough to negative the background presumption that the claim is arbitrable, it's hard to see that a generalized reference to concerted activities in a statute that concerns a whole lot of activities, most of which have nothing to do with going to court, is sufficient to express Congress's clear intent that with respect to going to court, this statute is meant to preserve the right to class proceedings, which mostly didn't exist at the time that Congress enacted that statute. As in American Express, the Supreme Court noted that the Sherman Act didn't do this because when it was enacted, or the Clayton Act was enacted, class act, class procedures as we know them today, class damages procedures didn't exist. So it seems a very, very hard argument to make under either of those two statutes in which the language is the same. Are you, do you think Brady, the Brady v. the NFL case is still good law or is good law in light of what's happened since? Compton credit and so forth? Well, Brady didn't involve the FAA. Brady was a question about whether a court could issue an injunction against a lockout. Right. But the court, Eighth Circuit, I think, said that a lawsuit filed in good faith by a group of employees to achieve more favorable terms and conditions of employment is concerted activity. So if that statement of the law is correct, then here we're talking about a lawsuit, a collective action. It is a concerted activity. Then why wouldn't that bring it under the Act? A couple of responses, Your Honor. I think, first of all, the reasoning in Brady didn't focus on the two provisions that are being relied on here. They really focused on particular prohibitions in Section 4, Section 4D, and whether that applied. So I think the Court doesn't have to conclude that Brady was wrongly decided in order to conclude that the targeted analysis based on the language, the specific language of 4D and the definition of labor dispute in Section 13 correctly undermine that, undergird that case. Because here they're not, the plaintiffs aren't relying on that. And I think a big problem with the plaintiff's argument here is what they're relying on is the incredibly general language of Section 102. And in addition to the things the plaintiff is relying on, which is, by the way, captioned as a statement of public policy, Section 102 also says, every employee shall have an, I'm quoting, full freedom of association, self-organization and designation of representatives of his own choosing to negotiate the terms and conditions of his employment. If that means what it says and is interpreted the same way that the plaintiffs would like to interpret the language about concerted activities, I think that means that requiring by majority vote employees who don't vote for the union to be represented by the union violates this provision. And any injunction and any contract that required those people to be represented by the union would be unenforceable under Section 103 under the, again, the very general language that the plaintiffs rely on, which says anything that violates the public policy of 102 is invalid under 103. So I think there are real dangers in sort of very broadly interpreting the language of 103, 102, and then saying any contract that we can conjure that violates them is a problem. There's the additional barrier that even if you were going to do that, the question here, which the Eighth Circuit didn't have to confront, is, is the language that Congress used sufficiently clear to negative the presumption that the FAA creates, which was not an issue there. So in other words, it could be that Section 7 has been correctly interpreted by the NLRB to protect concerted litigation activity. But it also could be, and we submit that it is, even if that's true, that doesn't mean that what Congress wrote is sufficient to displace the principle that the Court recognized in Amex and in Concepcion, because that principle requires a clear congressional command, and whatever the meaning of concerted activities might be in a situation in which there isn't the countervailing pressure or presumption of the FAA, it certainly isn't sufficient to overcome that. I'll let that run. Roberts. Okay. Thank you, counsel. I appreciate the argument. Three minutes for rebuttal. I'll hear from you again. Thank you, Your Honors. The clear congressional command language of Amex and CompuCredit deal with only one way to uphold the appropriate decision in this case. And because it falls, when you go back to my gender discrimination analogy, the substantive issue. Clearly, CompuCredit and American Express didn't say that the age discrimination laws or the Consumer Repair Act need to state, oh, by the way, arbitration agreements that deal with this are superseded by the law. So this goes back to the whole substantive issue argument. In terms of some of the other comments made, the Taft-Hartley Act came into play when it came to collective bargaining. The Taft-Hartley Act is not an issue in this case. And, in fact, the Railway Labor Act had a secondary boycott case in which they said the North LaGuardia Act still holds up because there's nothing in the Railway Labor Act which prohibits secondary boycotts. It didn't have what happened in the Taft-Hartley. You know, it's interesting. We have the Chamber of Commerce here coming, and I appreciate that. And I appreciate what they're able to do by virtue of concerted activity for mutual aid and protection. They get together in the Chamber of Commerce, and they argue in court for things, concerted activity for mutual aid and protection. NAACP versus Button, concerted activity for mutual aid and protection. The Boston Tea Party, concerted activity for mutual aid and protection. This is a very important fundamental right at issue here that is not addressed in American Express, not addressed in Concepcion, CompuCredit, or the Fifth Circuit, and it's something that has to be taken extremely seriously. Because what you're doing is you're taking one of the last arrows out of the quiver of concerted activity rights of employees by eliminating this concerted activity right to go to court together to enforce their rights. Thank you very much. Thank you, counsel. I appreciate the arguments in this case. The case just argued will stand submitted.
judges: Smith, Noonan, Watford